**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

YURI SHYSHKO, et al.        MEMORANDUM OF LAW

        Plaintiffs,

        -vs-          **Civ. No.:07 CV 6122 CJS**

COUNTY OF MONROE, et al.

        Defendants.

## INTRODUCTION

A date certain for trial in the above captioned matter is scheduled for January 9, 2012. On December 22, 2011, the Defendants through their counsel of record filed their First Motion in Limine seeking to (1) exclude "underlying criminal decisions"; (2) exclude proof of "alleged conspiracy"; (3) permit introduction of prior arrests; and (4) prohibit calling Patrick O'Flynn as a witness. (Dkt. # 40-2). In response, Plaintiffs file their response and cross motion seeking to bar the Defendants from relitigating the issue of whether there was **probable cause to arrest** the Plaintiffs based on the February 16, 2007 final order by the Honorable John P. Lomenzo, Jr. after a full hearing that determined defendant Monroe County Deputy Sheriff Surowy had neither reasonable suspicion nor probable cause to arrest any of the Shyshko Plaintiffs, (Ex. A; Ex. B; Ex. C; Ex. D) and to exclude the following pieces of evidence as set forth below.[1]

---

[1] All documents referenced herein are annexed to the Declaration of Christina A. Agola, Esq.

**FACTS RELEVANT TO THIS MOTION**

This is a civil rights action alleging federal and state claims of false arrest, excessive force, and negligence.  The following are Findings of Fact made by Judge Lomenzo based on evidence admitted at the probable cause, Huntley and Payton hearing held on July 21, 2006.

On December 10, 2005, at 11:35 p.m. Defendant Monroe County Deputy Sheriff Jason Surowy received a call from the 911 dispatcher to "check the welfare and a possible underage drinking party at 15 Carob Court," Penfield, New York, the residence of the Shyshko family.  At that time Deputy Surowy also received and read a text message that had been sent to the mobile computer of his patrol car which read:

> "Comp. said there is underage drinking going on here. Said dropped someone off here and saw it, he was not allowed in the house.  Vary [sic] adamant that he be anonymous and a male in the background was telling him to shut up." (See Ex. A, pg. 1).

At that time Deputy Surowy had no further information, i.e. he had no information of anyone being injured or in need of assistance wither inside or outside the Shyshko residence. (Ex. A, p. 1)

Deputy Surowy drove to the Shyshko residence and got there within a few minutes.  He parked a short distance away, got out of his car and was walking toward the house, less than 100 feet

away, when he saw 7-10 young people standing among some cars parked in the driveway, with more cars parked on a nearby cul-de-sac. None of the youngsters were holding beverage containers in their hands. (Ex. A, p. 1).

Deputy Surowy saw nothing illegal going on outside-no violations of the Penal Law, Alcoholic Beverage Control Law, or the Vehicle and Traffic Law. (Ex. A, p.1).

As Deputy Surowy approached, still some distance away, he stated "Hello, Sheriff's Department," and flashed his flashlight. Some of the youngsters started to walk away. Others began running away. Upon the deputy's command, all of them stopped running except Vladimir Shyshko, who kept walking toward the front door of his home. (Ex. A, p. 1).

Deputy Surowy had no knowledge that Vladimir Shyshko resided at the residence. (Ex. A, p. 1).

Deputy Surowy caught up with Vladimir Shyshko ("Vladimir") at the doorway where Vladimir had his hand on the doorknob; up and until that point, Deputy Surowy had not seen Vladimir make any threatening acts or violate any law. The deputy then grasped Vladimir's elbow to place him in the "escort position" for the purposes of detaining him. (Ex. A, p. 1).

While in the "escort position," Vladimir pulled his elbow away and attempted to enter the residence by opening the door. Deputy Surowy got him in the same position again, but while doing

3

so their legs were entangled causing both of them to stumble through the doorway into the residence. (Ex. A, p.1). Once inside Deputy Surowy attempted to further restrain Vladimir by placing him face first against a wall just inside the front foyer with both hands behind his back. (Ex. A, p. 1).

Deputy Surowy had trouble controlling Vladimir; Taras Shyshko and other teenagers in the house were yelling at Deputy Surowy. (Ex. A, p.1). At this time, Deputy Surowy was the **only** police officer at the scene. (Ex. A, p. 1).

Vladimir shoved the deputy's hand off of him and began running toward the living room; Deputy Surowy shouted to Vladimir that he was "under arrest" and ordered him to "get on the ground," but Vladimir did not obey his command so the deputy placed him on the floor and attempted to handcuff him to no avail. (Ex. A, p. 2).

Deputy Surowy had placed his boot on Vladimir's back to keep him on the floor while trying to protect himself from being tackled by two other individuals. Vladimir got up a few times and the deputy put him back on the floor. At one point the deputy saw Vladimir reaching for a glass bottle of Vodka, so he pepper-sprayed him. (Ex. A, p. 2).

Deputy Surowy tried to handcuff Vladimir but was overcome by pepper spray at which point Vladimir ran into the kitchen. (Ex. A, p. 2). Deputy Surowy chased Vladimir into the kitchen and

told him again that he was "under arrest, get on the floor." Vladimir did not obey and the deputy tried to place him on the floor, but Vladimir's arms were wet from trying to get the pepper spray out of his eyes and he was able to pull away and run out of the house. Deputy Surowy decided not to chase him any farther but to remain at the scene. Vladimir was arrested some time later. (Ex. A, p. 2).

In or about the same time, Deputy Surowy turned and saw Taras Shyshko ("Taras") coming out an upstairs room shouting "get the fuck out of my house. You can't come in here, mother fucker. Get off my brother." (Ex. B, p. 2). Deputy Surowy did not ask Taras if he lived in the house. (Ex. B, p. 2).

Taras then began coming down the stairs with clenched fists. Deputy Surowy told him to get back. Taras shoved the deputy on the right shoulder with both hands; Deputy Surowy ordered him to get back, but Taras shoved him again in the same manner and the Deputy struck Taras in the left temple area with his right fist, cutting him. Taras then ran upstairs and went into a bathroom. (Ex. B, p. 2).

After Deputy Surowy had tried unsuccessfully to place Vladimir under arrest and he had run out of the house, he saw Taras upstairs outside the bathroom yelling "Fuck you. I'm going to have you arrested," whereupon Deputy Surowy informed Taras that he was "under arrest," and to "come down here," but Taras

5

refused to do so and locked himself in the bathroom. (Ex. B. p. 2).

Deputy Surowy tried to get into the bathroom but could not because it was locked. Less than an hour later, other deputies arrived at the scene, and Taras was arrested. (Ex. B, p. 2).

Taras and Vladimir Shyshko were charged with Harassment in the Second Degree and Resisting Arrest in violation of §§ 240.26, subdivision 1, and 205.30 of the Penal Law for the events that occurred on December 10, 2005. (See Ex. A). Yuri and Nataliya Shyshko were charged with Obstructing Governmental Administration in the Second Degree in violation of § 195.05 of the Penal law.

With regard to the charges against Taras Shyshko and Vladimir Shyshko, the Honorable John P. Lomenzo, Jr. held a probable cause, Huntley and Payton hearing on July 21, 2006 and rendered a written decision on February 5, 2007 wherein he concluded the following:

    **A.** The Court had jurisdiction to hear and determine all the issues raised in the pre-trial hearing.

    **B.** Deputy Surowy had neither reasonable suspicion nor probable cause to arrest the defendants. Therefore, all observations of the defendant made by the deputy or any other police officer on December 10th or 11th, 2005 any statements made by the defendant in the presence of any such police officer on those dates were suppressed.

    **C.** Observations made and evidence seized by Deputy Surowy or any other police officer inside the residence at 15 Carob Court on December 10-11, 2005 related to possible consumption of alcohol on the premises during that time were suppressed.

   **D.** As suspension of the evidence resulted in no other evidence available to the People to pursue prosecution of the crimes with which the defendants were charged, the Information was dismissed with prejudice.

(See Ex. A & B).

With regard to the charges against Yuri and Nataliya Shyshko, on February 16, 2007, Judge Lomenzo issued the following Supplemental Decision and Order holding in relevant part:

> The Court held a Huntley and Payton hearing on July 21, 2006 and rendered its written decision on February 5, 2007, wherein it concluded that all evidence, including statements made by the defendants as well as observations and identifications made and any physical evidence seized by the police were suppressed.
>
> Upon further reflection, as suppression of the evidence resulted in no other evidence available to the People to pursue prosecution of the crime with which defendants are charged, the Information must and hereby is dismissed, with prejudice.

(See Ex. C).

**DISCUSSION**

**Plaintiffs' First Motion in Limine**

**POINT I**
**NO PROBABLE CAUSE FOR THE ARREST DETERMINATION ENTITLED TO COLLATERAL ESTOPPEL, AND SHOULD BE ADMITTED TO DEMONSTRATE THAT THERE WAS NO PROBABLE CAUSE FOR THE ARREST**

False arrest or false imprisonment is the unlawful restraint of an individual's personal liberty. *Loppin v. Costello*, 232 Ill. App. 3d 1033, 1041 (1992). The elements of a false arrest "are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Id*. A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest. *See e.g. Weyan v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). It is undisputed that this principle applies as well to a claim of false arrest under New York law. Where a court has already determined the issue of probable cause to make an arrest that is the subject of a claim of false arrest, a party may be estopped from relitigating that issue. *See Golino v. City of New Haven*, 950 F.2d 864, 868-69 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed. 2d 902 (1992).

Collateral estoppel, or issue preclusion, bars the subsequent relitigation of an issue that was actually litigated

and decided in a prior case between the parties, so long as there was a final judgment on the merits and the issue was necessary to resolution of the action. The elements of issue preclusion are: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action.

It should be noted that where a party has had a "full and fair opportunity" to litigate an issue in an earlier state proceeding, he is precluded from relitigating the same issue in a later federal case. *Allen v. McCurry*, 449 U.S. 90, 94-96, 103-04, 101 S.Ct. 411, 414-15, 419, 66 L.Ed 2d (1980). Other Circuits have applied collateral estoppel in a § 1983 action based on an alleged false arrest. *Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir. 1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed 2d 329 (1985), and its reasoning applies to this case where false arrest is the basis of a § 1983 claim, and where the state provided a full and fair opportunity for Deputy Surowy to support probable cause at a probable cause hearing. Accordingly a finding of "no probable cause" resulting from that very hearing should foreclose relitigation of that finding in a subsequent § 1983 action. *See Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987).

Here, (1) privity exists between the parties, (*i.e.* the Plaintiffs, the County of Monroe and Deputy Surowy); (2) Judge Lomenzo's decision was a final judgment on the merits of the issue of probable cause; (3) the issue of whether there was **probable cause to arrest** is the same in both the state criminal proceeding and federal and state false arrest claims and is based on identical facts; and (4) there was a full and fair opportunity to litigate the issue of probable cause before Judge Lomenzo, and a full opportunity to call witnesses and subject those witnesses to cross examination. (See Ex. D).  Accordingly, collateral estoppel bars the County from relitigating whether probable cause existed to arrest the Shyshkos since it has already been determined, following an extensive hearing on that very same issue, that no probable cause existed for the arrest.

Accordingly the following Exhibits, proposed by the County to demonstrate probable cause, and/or to convince the jury that a different determination on the issue of probable cause should result here, the following proposed defendants' exhibits should be excluded:

**Ex. 400**

**Ex. 401**

**Ex. 402**

**Ex. 403**

**Ex. 404**

**Ex. 405**

**Ex. 406**

**Ex. 407**

**Ex. 408**

**Ex. 409**

**Ex. 410**

**Ex. 411**

**Ex. 412**

**Ex. 413**

**Ex. 414**

**Ex. 415**

**Ex. 416**

**Ex. 417**

**Ex. 418**

**Ex. 419**

**Ex. 420**

**Ex. 421**

**Ex. 424**

**Ex. 425**

**Ex. 426**

Because the only claims for false imprisonment are from the December 10, 2005 arrest, the following proposed exhibits,

offered presumably to attempt to bolster the contention that probable cause existed in December 2005 to arrest the Shyshko Plaintiffs, but which cannot so bolster such contention insofar as they related to a May 2007 alleged incident, should be excluded as highly prejudicial:

**Ex. 431**

**Ex. 432**

**Ex. 433**

**Ex. 434**

**Ex. 435**

**Ex. 436**

**Ex. 437**

**Ex. 438**

### POINT II
### EVIDENCE OF PRIOR ARRESTS THAT DID NOT RESULT IN CONVICTIONS NOT ADMISSIBLE AS PER RULE 608(b)

Prior arrests of any of the named Plaintiffs which did not result in convictions are not admissible pursuant to Rule 608(b).[2] That includes the November 2005 Felony arrest of Taras Shyshko that did not result in conviction.(Ex. E).  The County

---

[2] The County did not identify which convictions they were referring to, and failed to attach criminal records for any of the Plaintiffs.

should not be permitted to use this arrest for any purpose.

**B.  Response to Defendant's Motion in Limine**

On December 22, 2011, the Defendants through their counsel of record filed their First Motion in Limine seeking to (1)exclude "underlying criminal decisions"; (2) exclude proof of "alleged conspiracy"; (3) permit introduction of prior arrests; (4) prohibit calling Patrick O'Flynn as a witness. (Dkt. # 40-2).

With regard to item (2), Plaintiffs concede to exclude "proof of alleged conspiracy" and withdraw its claims under VI "CONSPIRACY AND WITNESS INTIMIDATION UNDER § 1985 (2)" and "FAILURE TO ACT" under § 1986; and to(4)refrain from calling Patrick O'Flynn as a witness.

With regard to (1) and (3), Plaintiffs respond as follows:

**RESPONSE: POINT I**

**EVIDENCE OF THE DISPOSITION OF CRIMINAL
CASE IS ADMISSIBLE UNDER RULE 403**

Defendant argue in their submissions that admitting any evidence of the dismissal of the criminal charges against the Shyshkos would be unduly prejudicial.  The Plaintiffs disagree under Rule 403.  Excluding all dismissal evidence is unfairly prejudicial to their case.  If the jury hears testimony regarding Vladimir's arrest, the officers' suspicion of underage drinking, and the charges of interfering with the officers' duties, it

13

would be unfairly prejudicial to Plaintiffs not to allow them to provide the jury with an accurate procedural account of the disposition of the charge. *Brown v. City of Pittsburgh*, 2007 U.S. Dist. LEXIS 6411, *6 (W.D. Pa. Jan. 30, 2007)(allowing evidence in a Section 1983 suit that Plaintiff's criminal charges were dismissed to provide the "jury with a full and accurate procedural history"). Therefore, excluding all evidence and reference to the disposition of the criminal charges is neither fair not practical in this case if only because Plaintiffs would not be precluded from taking judicial notice of the state court proceedings or eliciting information as to the outcome of the arrests. *See Brundidge v. City of Buffalo*, 79 F. Supp. 2d 219, 223 (W.D.N.Y. 1999).

## RESPONSE: POINT II

### EVIDENCE OF THE DISPOSITION OF PRIOR ARRESTS NOT RELEVANT UNDER RULE 403

As stated above, there have been no convictions in conjunction with any arrest of the Plaintiffs. Defendants seeks to admit prior arrests for the purpose of demonstrating that they are not entitled to emotional damages. Although Defendant has failed to identify what arrests they are talking about, it is presumed they are referring to the subsequent arrest of Yuri and Vladimir Shyshko on May 10, 2007 for which both were charged with

14

Unlawfully Dealing With a Child 1st, NYS Penal Law 260.20 (2). (See Ex. F). However, as stated above, Plaintiffs withdrew their claims pursuant to these arrests, are not challenging probable cause, and are not asking for damages as a result of this subsequent arrest.  Accordingly, to seek to admit such subsequent arrests, as stated above is, would not make sense; such "facts" are not relevant to the claims and/or defenses at issue, and moreover admission of such evidence would be unduly prejudicial to Plaintiffs.  Further, there are no prior arrests, save the November 2005 bomb threat arrest that was dismissed without conviction against Taras Shyshko. The County has failed to demonstrate how this arrest, subject to exclusion under Rule 608, has any bearing on the claim for emotional distress due to Deputy Surowy's assault of him without probable cause.

Dated: January 2, 2012
Rochester, New York

                              Respectfully Submitted By:
                              /s/ Christina A. Agola
                              _____
                              Christina A. Agola, Esq.
                              Attorneys and Counselors at Law, PLLC
                              Attorney for Plaintiffs
                              1415 Monroe Avenue
                              Rochester, New York 14618
                              cagola@wnycivilrights.com